**J.G.N. CORP., an Oregon corporation, Plaintiff,**

v.

**NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation, National American Insurance Company of California, a California corporation, and National American Insurance Company of New York, a New York corporation, Defendants.**

**No. CV 86–649–PA.**

United States District Court,
D. Oregon.

April 24, 1989.

Michael C. McClinton and James C. Edmonds, Clark, Lindauer, McClinton, Todd, Krueger & Fetherston, Salem, Or., for plaintiff.

Barnes H. Ellis, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for Nat. American Ins. Companies.

## OPINION

PANNER, Chief Judge.

On September 7, 1988, I issued an opinion finding that defendants had breached their contract with plaintiff. *J.G.N. Corp. v. National Am. Ins. Co.*, 736 F.Supp. 1570 (D.Or. Sept. 7, 1988). On December 14, I issued an order clarifying certain terms in

that opinion. *J.G.N. Corp. v. National Am. Ins. Co.*, 736 F.Supp. 1570, 1574 (D.Or. Dec. 14, 1988).

A trial to determine the amount of plaintiff's damages was set for March 7, 1989. On that date, counsel informed me that the parties had resolved some of the damages issues, and presented their arguments on unresolved questions. The parties disagree about whether reserves for certain claims paid and closed during 1985, but not removed from defendants' year-end records, should be included in plaintiff's profit share calculations. They agree, however, on the amount of the judgment which should be entered depending on my ruling on that issue. The parties disagree about whether plaintiff's recovery of prejudgment interest should be limited to the amount paid on funds plaintiff deposited with the court.

I conclude that, in computing plaintiff's profit share, reserves for claims paid and closed in 1985, but not removed from defendants' 1985 year-end computer run, cannot be deducted. Plaintiff is entitled to recover prejudgment interest at the rate of nine percent (9%) as provided by Oregon law.

## BACKGROUND

Plaintiff J.G.N. Corp is a managing general agent for various insurance companies. Defendant insurance companies executed a General Agency Contract and Profit Sharing Agreement (Agreement) with plaintiff in 1984. The Agreement was modified in March 1985. Because my 1988 opinion and order discuss the Agreement, the parties' settlement agreement, and subsequent litigation, I will only summarize the facts briefly.

In August 1985, defendants rescinded plaintiff's authority to write their policies. Plaintiff considered the termination a breach of the 1984 Agreement, and threatened to bring a legal action. Among plaintiff's conditions for settlement of the dispute was defendants' agreement to pay the 1985 profit share in April 1986 as though it were a non-termination year. The parties' settlement agreement, executed in December 1985, provided that plaintiff's profit

share for 1985 was to be calculated "at April 1, 1986" on all business transacted in 1985.

Late in December 1985, defendants shut down their operations to consolidate before the new year. Losses reported during the last ten days of 1985 were not entered into defendants' computer system until 1986. Following the first phase of this trial, held on April 5 and 6, 1988, I found in favor of plaintiff on the breach of contract claim, and concluded that plaintiff's profit share was to be calculated only on income and losses reported during the 1985 calendar year. I excluded 1985 losses reported during the first three months of 1986 from these calculations.

Defendants asked me to clarify the meaning of certain terms in my September 7, 1988 opinion. They contended that "reported" as used in my opinion included losses of which the parties became aware in 1985 even if these were not entered into defendants' records until 1986, and argued that they should be allowed to deduct from plaintiff's profit share certain reserve adjustments made after the close of the 1985 calendar year.

I disagreed with defendants' interpretation of my opinion. My December 1988 order emphasized that, according to my September 1988 opinion, plaintiff's profit share was to be calculated on the income and losses reported during the 1985 calendar year. I concluded that only losses entered into defendants' records before their computer system was shut down on December 22, 1985, could be included in the calculations, and that defendants could not deduct from plaintiff's profit share adjustments made after 1985.

My opinion and order required calculation of plaintiff's profit share as if 1985 were a nontermination year, because I concluded that the parties had agreed to compute plaintiff's profit share on that basis.

## DISCUSSION

1. *Deduction of Claims Paid and Closed, but not Removed from Defendants' Records in 1985.*

The parties agree that a number of claims paid and closed in 1985 remained on

defendants' computer records at the end of 1985. Adjusting the 1985 accounts to reflect closure of these claims would increase plaintiff's profit share by reducing the amount set aside as reserves.

Plaintiff argues that reserves established for claims closed but still on defendants' records at the end of 1985 should be deducted. Plaintiff cites the testimony of Mr. Ogden, defendants' chief executive officer at the time, at the April 1988 trial. Responding to my questioning, Mr. Ogden stated that reserves on claims that had been closed should be deducted. Plaintiff characterizes that statement as a binding admission.

■ Defendants note that my December 1988 order allowed only losses entered on their computer by December 22, 1985, to be included in calculations, even if the parties knew of additional 1985 losses during that year. They contend that excluding from computation losses known but not entered in 1985, while allowing plaintiff to make the reserve adjustments it now seeks, would be inconsistent with my earlier rulings. I agree. My opinion and order required calculation of plaintiff's profit share as if 1985 were a nontermination year. Adjusting the accounts now to reflect closure of some claims still on the books in 1985 would be inconsistent with calculating profits on a nontermination year basis.

■ Plaintiff's argument that Mr. Ogden's statement concerning reserve calculations was a binding admissions is not persuasive. When Mr. Ogden made the purported admission, he did not have an opportunity to point out that there might be similar errors favoring the plaintiff which should be corrected as well. Mr. Ogden's comments must be considered in the context of defendants' position that errors should be corrected for both sides, and defendants' argument that April 1, not December 31, was the correct cut-off date.

### 2. *Prejudgment interest.*

■ Oregon statutes provide for prejudgment interest at 9% per year on "all monies after they become due." ORS 82.-010(2)(a). Prejudgment interest may be awarded on unliquidated damages for breach of contract when the damages are either ascertained or readily ascertainable. *Banister Continental Corp. v. Northwest Pipeline Corp.*, 76 Or.App. 282, 292, 709 P.2d 1103 (1985), *vacated on other grounds*, 301 Or. 763, 724 P.2d 822 (1986).

■ Under the Agreement, plaintiff was required, as defendants' agent, to make monthly payments of premiums owing to defendants. When the present dispute arose, plaintiff stopped making these payments. Instead, plaintiff deposited these funds with the court for investment in an interest-bearing savings account. In a pretrial order lodged February 29, 1988, the parties agreed that, should plaintiff prevail, the court should pay these funds to plaintiff as a set-off against any judgment entered in plaintiff's favor.

Though defendants do not argue that prejudgment interest is inappropriate, they contend that plaintiff should recover only the interest actually paid on these funds. Defendants argue that, because plaintiff designated the depository for these funds, and the deposits would ultimately secure payment of a judgment, plaintiff had use of the funds. They contend that it is unfair for plaintiff to deprive defendant the use of these funds without limiting prejudgment interest to that actually paid. I disagree.

Defendants cite several cases in support of their argument, relying chiefly upon *Reliable Marine Boiler Repair, Inc. v. Mastan Co.*, 325 F.Supp. 58 (S.D.N.Y.1971). This reliance is misplaced. *Reliable*, an admiralty action, is very different from the present case. In *Reliable*, creditors of a defaulting ship owner contested the right to insurance proceeds payable following damage to a ship. The insurance broker who received the insurance payments deposited the proceeds with the court. The court awarded the proceeds to the plaintiff, a creditor who had repaired the ship. The plaintiff claimed that another creditor who had attempted to obtain the insurance proceeds owed the plaintiff prejudgment interest. The court denied the plaintiff's request for prejudgment interest from the

other creditor, reasoning that the other creditor "has not received any interest on this sum, or other benefit from its use." *Id.* at 64.

This reasoning is inapplicable in the instant case. Here, defendants have benefitted from the deposit of funds with the court because the amount of prejudgment interest they owe is reduced by the amount of interest paid on these funds.

The other cases defendants cite are equally inapposite. In *Bank of China v. Wells Fargo Bank*, 209 F.2d 467 (9th Cir. 1953) the court concluded that, when national banks of rival countries claimed the same deposits in a United States bank, the domestic bank could avoid liability for interest payments by depositing the funds with the court. This case, like the other cases cited, is neither factually similar to the present case, nor decided according to Oregon law. The parties have cited no applicable Oregon cases, and I have found none.

Prejudgment interest is awarded to compel debtors to pay debts when due. *SDS Lumber Co. v. Allendale Mut. Ins. Co.*, 563 F.Supp. 608, 610–11 (D.Or.1983). Defendants' debt to plaintiff became due when they breached their contract to pay plaintiff's profit share, and plaintiff is entitled to recover interest on that debt at the full 9% annual rate provided by Oregon law.

## CONCLUSION

Claims paid and closed in 1985 remaining on defendants' records during that year as reserves cannot be deducted in calculating plaintiff's 1985 profit share. Plaintiff shall recover prejudgment interest on funds deposited with the court at the rate of 9% as provided by Oregon law. Defendants are entitled to offset interest actually paid on these funds from plaintiff's recovery.

This opinion constitutes my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).